**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **WILLIAM DOUNLEY,** § | |
| § | |
| **Plaintiff** § | |
| § | |
| v. § | Civil Action No. 3:08-CV-1388-O (BH) |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Brief* ("Pl. Mot.," docket #15), filed January 28, 2009; and *Commissioner's Motion for Summary Judgment* ("Def. Mot.," docket #16), filed February 19, 2009. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Cross-Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A.   Procedural History**

William E. Dounley ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act. On October 20, 2005, Plaintiff filed an application for disability benefits. (Tr. at 37). Plaintiff claimed he was disabled due to a back injury, herniated discs, and depression. (Tr. at 90). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 67-70, 61-63). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 60). On September 4, 2007, the day of the hearing, Plaintiff's attorney submitted a letter advising the ALJ that Plaintiff engaged in post-onset work activity. (Tr. at 50). Plaintiff's attorney requested that this work be considered a trial work period. *Id.* Plaintiff personally appeared and testified at a hearing later that day. (Tr. at 508-48). On December 6, 2007, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 34-49). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 6-8). The ALJ's decision therefore became the final decision of the Commissioner. (Tr. at 6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on August 11, 2008.

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born in 1964. (Tr. at 88). At the time of the hearing before the ALJ, he was 43 years old. (Tr. at 512). He attended special education classes and graduated from high school. (Tr. at 95, 543). His past relevant work experience included work as a groundskeeper, maintenance laborer, and maintenance supervisor at an apartment complex. (Tr. at 91, 542). Plaintiff last worked as a maintenance supervisor on December 10, 2004. He worked as a groundskeeper for a four and

a half month period between February 4 and June 10, of 2007, and for a six week period between June 28 and August 13, 2007. (Tr. at 87, 91, 514-16).

    **2.**    **Medical Evidence**

On December 10, 2004, Plaintiff and a coworker were carrying a refrigerator upstairs at the apartment complex where he worked. The co-worker lost his balance and pushed the refrigerator back towards Plaintiff, who felt his back twist and extend backwards. (Tr. at 148, 184). Plaintiff's employer referred him to Concentra Clinic, and the doctor there prescribed anti-inflammatory agents, muscle relaxants, pain medications, and physical therapy. (Tr. at 148). Plaintiff was dissatisfied with the care he received at Concentra and sought care from a chiropractor, Curtis Hall, D.C., on December 15, 2004. (Tr. at 184). An MRI ordered by Dr. Hall showed a disc bulge at L4-5 and disk herniation at L5-S1 with a radial tear at the outer annulus fibrosis. (Tr. at 156). Dr. Hall performed spinal manipulations on Plaintiff on an almost daily basis for the next month. (Tr. at 166-81).

On a referral from Dr. Hall, Plaintiff visited Eduardo Garcia, M.D., on January 21, 2005. (Tr. at 148-49). Dr. Garcia noted that Plaintiff had moderate tenderness along the left lumbosacral border; mild to moderate muscle spasm with mild guarding along the paravertebral lower thoracic and lower lumbosacral borders; positive straight leg raise on the left at 35 degrees; painful toe walking; and 2+ bilateral deep tendon reflexes. (Tr. at 149). Dr. Garcia diagnosed Plaintiff with herniated nucleus pulposus at L5-S1, ordered electrophysiologic (nerve) studies, and continued physical therapy. *Id.*

A neurologist, Jonathan Walker, M.D. performed nerve conduction studies on January 21, 2005. (Tr. at 150-52). Dr. Walker confirmed the diagnosis of radiculopathy due to damage to

several levels of Plaintiff's spine.

On a referral from Dr. Garcia, Plaintiff visited Anand Joshi, a specialist in pain management, on January 21, 2005. (Tr. at 157-60). Dr. Joshi assessed Plaintiff with back and leg pain due to injury with radiating symptoms, bulging lumbar disc, and lumbosacral radiculopathy. (Tr. at 159). He recommended continued conservative care consisting of medications and rehabilitation. *Id.*

On February 4, 2005, Plaintiff was hospitalized at Millwood Hospital after a major bout of depression. (Tr. at 362-69). Three days later, he transferred to North Texas State Hospital in Wichita Falls, where he was admitted and received four days of inpatient psychiatric treatment. (Tr. at 373-434). He was discharged on February 11, 2005, with a diagnosis of major depression, recurrent with psychotic symptoms, and alcohol abuse. (Tr. at 377).

On May 2, 2005, Lewis Frazier, M.D., injected Plaintiff's L5-S1 disc space with an epidural steroid. (Tr. at 440). Approximately two and a half weeks later, Dr. Frazier wrote that Plaintiff reported no relief and that the procedure aggravated his pain for one week. (Tr. at 310). On physical examination, Dr. Frazier observed pain in Plaintiff's left leg when bent, positive straight-leg raise on left for buttock and hamstring pain, and pain in the lower left back and when standing. *Id.*

James Guess, M.D. examined Plaintiff on May 27, 2005. (Tr. at 308-09). On physical examination, Dr. Guess noted that Plaintiff was in no acute distress, had a normal gait, and could toe and heel walk with some weakness on the left. (Tr. at 308). Plaintiff had 5/5 strength in the lower extremities but pain with straight leg raising. *Id.* Dr. Guess diagnosed Plaintiff with lumbar herniated disc pulposis, lumbar radiculopathy, and lower back pain. (Tr. at 309). He recommended more steroid injections at L4-5 and L5-S1 and physical therapy (*id.*), but the injections were not approved and physical therapy was denied. (Tr. at 306).

Plaintiff and Dr. Frazier began to consider surgery for Plaintiff's lower back pain in June of 2005. (Tr. at 306-07). On July 18, 2005, Dr. Frazier performed a lumbar provocation discogram, a diagnostic procedure used in preparation for surgery. (Tr. at 302-05). The procedure showed positive L5-S1 with severe concordant discogenic pain at low pressures with large posterior annular tear and significant epidural leak. (Tr. at 305). Plaintiff decided to proceed with disc replacement surgery in August of 2005, but his insurer denied authorization in February of 2006. (Tr. at 300, 290). In the intervening period, his pain and depression continued, and he increased his dosage of Vicodin. (*See* Tr. at 291, 296-98).

On the advice of Dr. Guess, Plaintiff decided to proceed with anterior lumbar interbody fusion at L5-S1 instead of disc replacement. (Tr. at 290). Francisco Battle, M.D., provided a second opinion and concurred that fusion at L5-S1 was an appropriate treatment for Plaintiff's lower back pain. (Tr. at 346-49). Plaintiff had back surgery on July 11, 2006. (Tr. at 283). At a follow up examination on July 21, Kari Zimmerman, a physician's assistant to Dr. Guess, noted that Plaintiff continued to have pain and discomfort, but that the screws inserted into his lumbar area were in satisfactory positions. (Tr. at 283).

On August 11, 2006, Plaintiff's sister drove him to the emergency room because he took 15 tablets of his prescription pain medication in an apparent suicide attempt. (Tr. at 351-59). On August 28, 2006, Dr. Guess noted that Plaintiff's depression had been a "major issue," and that he "needs to get going on physical therapy." (Tr. at 282). Dr. Guess believed that physical therapy would help with Plaintiff's depression in addition to his flexibility and strength. *Id.* Approximately two weeks later, Plaintiff began physical therapy. (Tr. at 448-49).

### 3.     Hearing Testimony

A hearing was held before the ALJ on September 4, 2007. (Tr. at 508-48). Plaintiff appeared personally and was represented by an attorney.

#### *a.     Plaintiff's Testimony*

Plaintiff testified that he was born in 1964 and that he was 43 years old. (Tr. at 512). He had twelve years of formal education, none of it beyond high school. *Id.*

Plaintiff testified that on December 10, 2004, he injured his lower back at work while trying to move a refrigerator up a staircase. (Tr. at 516). When physical therapy, pain medication, and other non-invasive treatments did not alleviate his pain, he underwent surgery in July of 2007 to fuse vertebrae in his lower back. (Tr. at 517-18).

Shortly after Plaintiff injured his back, he began to have psychiatric problems related to depression. He was hospitalized in February of 2005 for suicidal thoughts and again in July of 2007 for an attempted suicide. (Tr. at 518-20, 525-26). He received mental health care treatment from Denton County MHMR and took psychiatric medications, which help "some." (Tr. at 521, 525). He also took sleeping medications. (Tr. at 523-24).

In the period between his back injury and surgery, Plaintiff testified that he typically got out of bed around 10 a.m. and watched television and slept most of the day. (Tr. at 527-28). Three weeks after his back surgery, he testified that he could walk around in his apartment. (Tr. at 529). In 2007, he attempted to return to his previous work as a maintenance person at an apartment complex. (Tr. at 514-15). He worked full-time for approximately four and a half months but could not perform all required tasks. (Tr. at 530). He stated that most of his tasks consisted of picking up paper around the property. (Tr. at 514-15).

### b.  *Medical Expert's Testimony*

A medical expert ("ME") testified that after Plaintiff's work injury, an MRI of his back showed disc herniation at the L5-S1 level. (Tr. at 532). Examinations after the injury varied; some were normal and some showed weakness and decreased sensation in the right lower extremity. *Id.* After the surgery, the medical records showed improvement. (Tr. at 533). The ME estimated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and sit, stand, or walk for 6 hours in an 8-hour workday. (Tr. at 535). The ME testified that Plaintiff had the additional limitations of needing to shift positions every 30 minutes and stoop or reach overhead only occasionally. *Id.*

A second ME testified about Plaintiff's mental situation. (Tr. at 538). The ME testified that Plaintiff was diagnosed with major depressive order and alcohol abuse. (Tr. at 538). He believed that the alcohol abuse was an episodic situation and that he was treated effectively for depression. (Tr. at 540).

### c.  *Vocational Expert's Testimony*

A vocational expert ("VE") also testified at the hearing. The VE testified that Plaintiff had more than nine years of work history in apartment maintenance. (Tr. at 542). Plaintiff's experience in apartment maintenance included groundskeeper (medium, unskilled), maintenance laborer (heavy, unskilled), and apartment maintenance supervisor (heavy, skilled). *Id.* Plaintiff also worked as a trainer for MHMR (medium, semi-skilled, specific vocational preparation ("SVP") of 4). (Tr. at 543). Based on all of Plaintiff's past work at or above the medium exertion level, the VE testified that Plaintiff could not perform any of his past relevant work. *Id.*

The ALJ proposed a hypothetical person who could perform unskilled light work with the

additional restrictions of needing to adjust positions from sitting to standing every 30 minutes and who could occasionally stoop or reach overhead. (Tr. at 543-44). The VE testified that the sit/stand requirement precluded 90% of the occupational base but that unskilled clerical work met these requirements. (Tr. at 544. Examples of such work included mail clerk, general office clerk, and ticket taker. *Id.* The VE testified that there were 130,000 of these positions in the state of Texas and 1.3 million nationally. *Id.* The VE also testified that such a person could perform approximately 15% of the sedentary occupational base. (Tr. at 545). Examples of these sedentary jobs included lens inspector, film inspector, telephone clerk, and address clerk, of which there were approximately 25,800 jobs in Texas and 250,000 in the national economy. (Tr. at 545-46). The VE testified that a requirement to lie down for 60 to 90 minutes each day would preclude competitive employment. (Tr. at 546).

**C.     ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on December 6, 2007. (Tr. at 34-49). The ALJ found that Plaintiff was last insured for disability insurance benefits under Title II through December 31, 2009. (Tr. at 39, ¶1). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, December 10, 2004, but the same finding states that Plaintiff engaged in substantial gainful activity between February 4, 2007, and June 24, 2007. (*Id.*, ¶2). The ALJ determined that this work activity demonstrated that Plaintiff could work but declined to grant the trial work period requested by Plaintiff's attorney. (Tr. at 40; *see* Tr. at 50).

The ALJ then found that Plaintiff had the severe impairments of (1) back injury with herniated nucleus pulposus requiring surgery on July 11, 2006, and (2) depression due to medical

condition. (Tr. at 40, ¶3). The ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment during his period of alleged disability. (Tr. at 43, ¶4).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. (Tr. at 45, ¶5). Plaintiff's ability to perform light work was reduced by an inability to stoop or reach overhead on more than an occasional basis; by a need to change positions at 30 minute intervals to relieve back pain; and by moderate limitations in social functioning and one or two episodes of decompensation. *Id.* Although Plaintiff was unable to perform any of his past relevant work, the ALJ determined that Plaintiff's age, education, work experience, and RFC enabled him to make a successful adjustment to other work existing in significant numbers. (Tr. at 48-49, ¶10). Based on Plaintiff's ability to perform other work, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from his alleged onset date through the date of the decision. (Tr. at 49, ¶11).

## II. ANALYSIS

### A.   Legal Standards

#### 1.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity

>      will not be found disabled regardless of medical findings.
>
> 2.   An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.
>
> 4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5.   If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.   <u>Issues for Review</u>**

Plaintiff presents the following issues for review:

(1)   Did the ALJ analyze Mr. Dounley's entitlement to a "period of disability" for the

    lengthy period of time prior to surgery, in a manner that is sufficient to permit "meaningful judicial review"? Alternatively, does substantial evidence compel the conclusion that Plaintiff experienced a period lasting 12 months or longer in which he was unable to maintain full-time employment due to his medical condition?;

(2)  Did the ALJ properly evaluate the mind-numbing side-effects Mr. Dounley experienced from the high doses of narcotics he was taking?;

(3)  Did the ALJ properly evaluate whether Plaintiff's 16-week effort to return to work meets the criteria for an "unsuccessful work attempt" under 20 C.F.R. § 404.1574(c)?;

(4)  Did the ALJ follow proper legal standards in evaluating the medical opinion of Plaintiff's long-time treating orthopedic surgeon, Dr. James Guess?;

(5)  Did the ALJ follow proper legal standards in evaluating the medical opinion of Dr. Francisco Battle, the neurosurgeon from whom Dounley sought a "second opinion"?; and

(6)  Did the ALJ properly disregard the period of time in which Mr. Dounley was involuntarily committed to a psychiatric hospital as well as the later time when he took 15 Norco tablets to end his pain, based on ME testimony that Plaintiff's major depression became "stable" when he began taking the proper psychoactive drugs?

(Pl. Mot. at 2).

## C.  <u>Issue One: Closed Period of Disability</u>

Plaintiff first contends that the ALJ erred by failing to consider if he was entitled to a closed period of disability.

The Social Security Act states that a claimant is disabled and entitled to benefits if the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In the typical disability case, an application for benefits is decided while the claimant is under a continuing disability. *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).

Once the application is granted, payments continue in accord with that decision until the Commissioner determines whether to terminate benefits at a subsequent hearing. *Id.* A "closed period," in contrast, is a finite period of time which started and stopped prior to the date of the administrative decision of disability status. 93 A.L.R. Fed. 161 § 1 (1989); *see* 42 U.S.C. § 1382c(a)(3)(A). "[I]n a closed period case, 'the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" *Waters*, 276 F.3d at 719 (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987). In closed period cases, "the ALJ engages in the same decision-making process as in termination cases, that is, deciding whether (or, more aptly, when) the payments of benefits should be terminated." *Id.* Such a decision requires the ALJ to determine the date of medical improvement. *Id.* (applying medical improvement standard to the cessation date in closed period cases); *see* 42 U.S.C. § 423(f) (standard of review for termination of disability benefits).

In this case, the ALJ determined that Plaintiff did not perform any substantial gainful activity from his alleged onset date (December 10, 2004) to the date he returned to his previous work as a groundskeeper at an apartment complex (February 4, 2007). (Tr. at 39-40, ¶2). This period of inactivity spanned almost twenty-six months and was well in excess of the twelve months required under the Social Security Act for a period of disability, if Plaintiff was in fact disabled during this period. 42 U.S.C. § 1382c(a)(3)(A). Plaintiff contends that there is abundant evidence in the medical record showing that he could not have sustained competitive work on a full-time basis during this period. (Pl. Mot. at 23). The ALJ found that despite these allegations, Plaintiff was not disabled during this period because he retained the RFC to perform "restricted light work activity at all times relevant to this decision." (Tr. at 46). The evidence cited by the ALJ in formulating

Plaintiff's RFC, however, relied upon Plaintiff's medical records *after* his July 11, 2006 surgery and Plaintiff's engagement in substantial gainful activity in 2007. (Tr. at 46). At most, these records account for the seven month rehabilitative period between Plaintiff's surgery and the date he returned to his previous work; this still leaves the nineteen months between the alleged onset date and surgery without an RFC assessment based on medical records from that period. Although the ME examined some of Plaintiff's pre-surgery medical records at the administrative hearing (Tr. at 532), the only pre-surgery medical evidence relied upon by the ALJ for the RFC assessment in his written decision pertained to Plaintiff's level of pain. (Tr. at 46). This alone does not account for Plaintiff's ability to perform substantial gainful employment prior to his surgery.

Defendant does not address Plaintiff's argument that the ALJ failed to consider a closed period of disability. (*See* Def. Mot.). He notes that Plaintiff's return to work as a groundskeeper in February 2007 shows that Plaintiff was not disabled for twelve months (*id.* at 10), but this statement is inaccurate because Plaintiff alleged disability for a twenty-six month period prior to his return to work in 2007. Defendant's assertion also fails to address the ALJ's reliance on post-surgery medical records for a pre-surgery RFC.

Disability determinations must stand or fall with the reasons set forth in the ALJ's decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In this case, the ALJ determined that Plaintiff was not disabled during the twenty-six month period preceding his return to work based on an RFC determined from post-surgery records. Due to this error, the Court finds a lack of substantial evidence to support the ALJ's finding that Plaintiff was not disabled for the closed period between December 10, 2004, and February 4, 2007. *Greenspan*, 38 F.3d at 236; *Leggett*, 67 F.3d at 564. Accordingly, the decision of the ALJ must be reversed and remanded for reconsideration of

Plaintiff's RFC for the period between his alleged onset date and the date he returned to work.

Since the reconsideration of Plaintiff's RFC on remand could impact the RFC for post-surgery period, the Court does not address the five remaining points of alleged error.

### III.   RECOMMENDATION

Plaintiff's motion for summary judgment (docket #15) should be **GRANTED**, *Commissioner's Motion for Summary Judgment* (docket #16) should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for reconsideration.

On remand the ALJ must determine Plaintiff's RFC for the period between December 10, 2004, and February 4, 2007, based on medical records from that time period. If the ALJ determines that Plaintiff was disabled for at least twelve months during this period, he shall determine the date of medical improvement and award benefits for a closed period of disability.

**SO RECOMMENDED**, on this 30th day of April, 2009.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE